## AUGUSTUS M. GEESEY, ADMR., *vs.* AMELIA M. GEESEY ET AL.

*Allowance of Counsel Fees to Administrator.*

When an administrator has paid an attorney employed to represent him in litigation concerning the estate, and the amount paid has been allowed the administrator in an account passed by the Orphans' Court, that account ought not to be re-opened and the amount so allowed reduced, unless it is clearly shown that the amount so paid was unreasonable.

Appeal from the Orphans' Court of Frederick County.

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE and SCHMUCKER JJ.

*Frank L. Stoner* (with whom was *J. F. R. Heagey* on the brief), for the appellant.

*Jacob Rohrback* and *Charles C. Waters* (with whom was *Emory L. Coblentz* on the brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

This is the second time this controversy has been before us—the report of the case on the former appeal being found in 94 Md. 371. The Orphans' Court of Frederick County passed an order rescinding its order of ratification of an account which had been stated by the appellant, and ratified by that Court, without giving him an opportunity to prove the value of the service of his counsel, and the propriety of the allowance of fees paid by him, for which he had been credited in that account. The items objected to were for fees paid by the administrator in four cases, amounting to $195.00, which had been included in the account under the term " costs " and were not specifically brought to the attention of the Orphans' Court. We said in that case, and repeat now, after an examination of this record, that there is nothing to justify the charge or insinuation that Mr. Heagey attempted to impose on the Court or the deputy register of wills who stated the account. He signed a receipt for his fee in each of the four cases on the statements filed by the administrator, and although the Chief Judge of the Orphans' Court testified that it was not the custom of that Court to examine all vouchers, as we said in the former opinion, " Mr. Heagey might well have assumed that they would be examined by the Court before the account was ratified," or, we might add, that the deputy register of wills, who stated the account, would necessarily do so in the discharge of his duties. Of course it is possible for the Court in examining an account of this kind before ratifying it to over-

look some items which it would not allow if its attention had been specially directed to them, and mistakes may occur, but we did not in the former opinion, and do not now refer to this, by way of criticism of the Court below, but to show that in our opinion there is no reason to impute improper motives to the administrator or to his attorney by reason of the manner in which the receipts for these fees were given and filed. As we said in the former appeal, the Orphans' Court has the power to re-open accounts of executors and administrators and correct errors therein, and we remanded the case so that the matter could be properly investigated and acted on by the Court. The administrator had paid the attorney the fees allowed in the account, and as we are satisfied that both of them acted in good faith, the account as stated should not be disturbed unless there was manifest error in these allowances. The Chief Judge of the Orphans' Court was of the opinion that the fees in the first account were to include services rendered and to be rendered, but the other two members of the Court, who sat below, have allowed in the order appealed from $75.00 in addition to the fees in the first account—thereby recognizing that something additional should be allowed.

The testimony on both sides is unsatisfactory in some respects, but it cannot be said from an examination of this record that the fees paid to Mr. Heagey are so out of proportion to the services rendered by him as to justify the Court in setting aside the account already ratified by it. The administrator testified that he thought they were reasonable and he and Mr. Heagey ought to know more about the character of the services rendered than others would. It is not possible to accurately determine the real value of the services of an attorney by the amount involved, or by what appears of record in the case, as a great deal of the labor of a careful attorney is performed in the preparation of the case outside of the court house. If administrators and executors, who act in good faith in paying counsel fees in cases in which they ought to be represented by attorneys, are to be subjected to personal loss simply because the members of the Orphans' Court, or

some person interested in the estate, deem the fees paid too high, there would be great danger in some instances of their not being properly represented, as it would be difficult to get competent attorneys if their compensation is to depend wholly upon the views of the judges of the Orphans' Courts or distributees. It is undoubtedly the duty of an administrator to defend a suit for a claim against his decedent which he has reason to believe is unjust, and when he employs counsel for that purpose, he ought to be allowed a reasonable amount as compensation for him, and when he has paid him and the amount is not shown to be unreasonable, he ought to receive credit for it out of the estate. When therefore, as in this case, he has paid the attorney for his services, and has been allowed for the amount so paid in his account, that account ought not to be reopened for the purpose of reducing the amount unless it clearly appears that it was unreasonable. The testimony in this record is very conflicting on that subject, and as we are satisfied there was no attempt or intention to impose on the Court by the method adopted, and as the petitioners have not clearly established that the charges were unreasonable, we think the petition filed by them ought to have been dismissed and that the account should not have been disturbed. The order appealed from will therefore be reversed and the petition dismissed.

*Order reversed and petition dismissed,*
*the appellees to pay the costs.*

(Decided March 31st, 1903.)